SANTANA LIVE-STOCK & LAND CO. et al. v. PENDLETON et al.

(Circuit Court of Appeals, Fifth Circuit. June 7, 1897.)

No. 567.

1. PUBLIC LANDS—HEADRIGHT CERTIFICATE ISSUED TO HEIRS—ASSETS OF ESTATE.
   A headright certificate for land, issued by the proper officers of the republic of Texas, to the heirs of a deceased settler entitled thereto by prior settlement. under the laws of Mexico, became assets in the hands of the administrator of such settler, and subject to be applied by the proper probate court to the payment of his debts.

2. SAME—SALE OF LANDS BY ADMINISTRATOR—SUBSEQUENT RELOCATION OF CERTIFICATE.
   The sale by an administrator, under order of the probate court, to pay debts, of land located under a headright certificate issued to the heirs of the decedent. passed all right and title of the estate to such certificate, and, on its subsequently becoming floated on account of a conflict with a prior location, the grantee took title to land patented to the heirs by virtue of said certificate, on its subsequent relocation, under Rev. St. Tex. 1879, art. 3961, providing that such title shall vest in the heirs or assigns of the original settler according to their interest in the certificate. In such case, the misdescription of the land in the administrator's deed becomes immaterial.

3. ADMINISTRATOR—SALE OF LAND TO PAY DEBTS.
   An order made, on application by an administrator, to sell 600 acres of land, or so much as necessary to pay debts, to be taken from one half league and labor owned by the estate, authorizes the sale of so much of the half league and labor as may be required, though more than 600 acres.

4. PRESUMPTION OF REGULARITY.
   After the lapse of 50 years, every reasonable presumption will be indulged in to support titles acquired at administrators' sales, made under orders of courts of competent jurisdiction; and where the records show that such sales were duly reported, and deeds executed, a confirmation will be presumed, when necessary.

In Error to the Circuit Court of the United States for the Northern District of Texas.

The defendants in error, Mary Ann Pendleton and other heirs at law of Creed T. Pendleton, deceased, instituted their action of trespass to try title in the United States circuit court at Waco, against D. S. McDaniel and the other plaintiffs in error herein, on February 6, 1896, claiming one league and labor of land lying in Coleman county, Tex., patented to the said Creed T. Pendleton on the 9th day of January, 1874, by virtue of headright certificate No. 21, issued by the board of land commissioners of Washington county, Tex., on the 14th of March, 1839. Subsequent to the filing of the original petition, to wit, on November 24, 1896, the plaintiffs below filed their first amended original petition, wherein they brought their action of trespass to try title against the plaintiffs in error as defendants, for said land, and in which they claimed rents in the sum of $2,000 per annum from the 1st day of March, 1893. On November 26, 1896, the defendants, who are plaintiffs in error here, filed their first amended original answer, wherein they demurred generally, and pleaded not guilty. The defendant the Santana Live-Stock & Land Company, as to 844 acres of the land sued for, and 134 acres, 178 acres, and 140 acres particularly described, pleaded the three, five, and ten years' statutes of limitation. The Santana Live-Stock & Land Company also suggested improvements in good faith, setting them forth, to the amount of $1,100. The defendant D. S. McDaniel claimed 140 acres of the land in controversy by answer, describing it, and pleaded the three, five, and ten years' statutes of limitation, and also suggested improvements in good faith to the amount of $362.50. The defendant J. D. Smith claimed in his answer 355.8 acres of the land sued for, pleaded the three, five, and ten years' statutes of limitation, and suggested improvements in good faith to the value of $307.20. The defendant J. R. McMillin claimed 54 acres of the land sued for, pleaded the three, five, and ten years' statutes of limitation, and suggested improvements in good faith to the value of $25. The defendant W. M. Newman claimed 640 acres of the land in controversy, pleaded the three, five, and ten years' statutes of limitation, and suggested improvements in good faith of the value of $1,100. The defendant S. J. Pieratt claimed 160 acres of the land in controversy, pleaded the three, five, and ten years' statutes of limitation, and suggested improvements in good faith to the value of $770.97. The defendant Henry Braun claimed 120.3 acres of the land sued for, pleaded the three, five, and ten years' statutes of limitation, and suggested improvements in good faith to the value of $183. The defendant W. B. Braun claimed 359.8 acres of the land in controversy, pleaded the three, five, and ten years' statutes of limitation, and suggested improvements in good faith of the value of $1,020. The case was called for trial on the 15th of December, 1896, and verdict and judgment were rendered and entered in favor of the plaintiffs (defendants in error), on the 18th of December, 1896. The verdict of the jury, under a peremptory instruction of the court, found for the plaintiffs, the heirs of Creed T. Pendleton, a three-fourths undivided interest in the land sued for, and also found the rental value of the land without improvements for two years preceding the institution of the suit to be five cents per acre per annum, and its rental value from October, 1883, up to two years preceding the institution of the suit, to be five cents per acre per annum without improvements. They further found the value of the land without improvements to be $2.50 per acre, and that the land was increased in value by the improvements only to the extent of said improvements. They also found for the defendants for improvements in good faith as follows, these amounts being three-fourths of the value of said improvements: Santana Live-Stock & Land Company, $840; J. D. Smith, $230.40; J. R. McMillin, $18.75; W. M. Newman, $632.50; S. J. Pieratt, $492.66; Henry Braun, $106; W. B. Braun, $661.87. There was no finding in the verdict as to the claim of defendant D. S. McDaniel for improvements, or upon any other special issue. Thereupon the court entered its judgment adjudging an undivided three-fourths interest in the lands sued for to plaintiffs, the heirs of Creed T. Pendleton, and further adjudged that the premises sued for were of the value of $2.50 per acre, without improvements, and that the rental value of the premises for two years preceding the institution of the suit was 5 cents per acre. It further adjudged that the rental value of the premises, without im-

81 F.—50

provements, from the time possession was taken of same by the defendants and
their vendors, to wit, in October, 1883, had been five cents per acre per annum.
It further adjudged the value of the improvements to each of the defendants
as found by the jury, and, after deducting therefrom the rents from October,
1893, they adjudged the net balance remaining in favor of defendants for im-
provements. The judgment proceeds to recite the fact that the verdict omitted
to find in favor of the defendant D. S. McDaniel on his claim for improvements
in good faith, and that plaintiffs, by counsel, in open court, requested the court
to render judgment for said defendant McDaniel for his entire claim for improve-
ments, as set up in his answer, irrespective of rents, which the court proceeded
to do. The judgment then proceeds to set out the particular tracts claimed by
each of the defendants, and then entered the statutory judgment ordering and
adjudging that no writ of possession should issue for one year, unless the plain-
tiffs should pay into court for the defendants the amounts of the judgments ren-
dered in favor of each defendant for their improvements, and upon neglect to do
so within the term of one year the defendants, or any of them, could, within
six months after the expiration of the year, pay into court the sum of $2.50
per acre for the amount of lands recovered by plaintiffs, together with other pro-
visions as provided by the statutes of Texas relating to the action of trespass to
try title and suggestion of improvements in good faith. The court further ad-
judged that the plaintiffs Benjamin Pendleton and his daughter, Nannie F.
Adams, and her husband, Richard Adams, were barred by the statutes of lim-
itations as pleaded in the cause, which was admitted by their counsel.

Upon the trial, the plaintiffs offered in evidence the patent to the heirs of
Creed T. Pendleton, bearing date January 9, 1874, for the land in controversy,
in Coleman county, Tex., which patent recited that it was issued by virtue of
certificate No. 21, issued by the board of land commissioners of Washington coun-
ty, Tex., on March 14, 1839, for one league and labor of land. And, after offer-
ing evidence tending to prove that the plaintiffs were the only heirs at law of
Creed T. Pendleton, deceased, plaintiffs proved that said Creed T. Pendleton was
a native, and resided for a number of years previous to 1828 or 1830 in Buck-
ingham county, Va.; was there married, and had six children by his then living
wife; that about 1828 or 1830 he left his wife and family in Virginia, declaring
his intention to come to Texas, and make a home in Texas, so that he could
bring them there to live with him; that after reaching Texas somewhere between
the years 1830–1833, he wrote to his wife and family in Virginia, requesting them
to come to Texas, and join him there; he also wrote from Tennessee, on his way
to Texas, stating his intention of making his home in Texas, and bringing them
there; that about 1835 a man came back to the neighborhood in Virginia where
the family resided, and stated that Creed T. Pendleton had married in Texas,
and was dead, and that it was the general understanding that he had married
and died in Texas. Neither the wife of Creed T. Pendleton in Virginia, nor any
of her children ever came to Texas. It was admitted by plaintiffs that Adams
and wife, who claimed one-fourth of the land, were barred by limitation, and
plaintiffs showed that the other plaintiffs were not so barred.

Defendants proved by G. R. Seward: That he (the witness) emigrated to Texas
in December, 1833, and resided in Cole's settlement, in the state of Coahuila and
Texas, and in Washington county, Tex., from its organization up to 1892. That
he knew a man by the name of Creed T. Pendleton in 1834, at said Cole's set-
tlement, in Austin's colony; that Creed T. Pendleton boarded with Shubal
Marsh, and afterwards with witness' father. That said Pendleton was a single
man, so far as witness knew and believed, but in 1834 or 1835 he married a
Miss Elizabeth Goodnoe (or Goodnow). Witness was present at the marriage,
and it was performed in witness' father's house. Pendleton and his wife lived
together on witness' father's place after they were married. That according to
witness' belief and knowledge said Pendleton did not bring any family to
Texas, and witness never heard of his having any other wife or family in Texas.
He left no children that witness knew of. Said Pendleton died in 1835, on wit-
ness' father's place, in said Cole's settlement, Austin's colony, leaving his wife
surviving him. She left Cole's settlement shortly after the death of her husband,
for Missouri. They had no children when she left. Witness also knew Shubal
Marsh, who lived in said Cole's settlement, and knew him until his death, many
years afterwards. Marsh was always looked upon as an honest, upright, and

honorable man as long as he lived. Defendants next offered in evidence an order from the board of land commissioners of Washington county, Tex., to the following purport and effect: That Shubal Marsh, administrator, had proved that C. T. Pendleton, deceased, was a citizen previous to December; that he came to Texas in 1833, married and resided here with his family, and remained until his death, which occurred in June, 1835; certificate issued to Shubal Marsh, his administrator, for one league and labor of land, 14th of March, 1839. Defendants next offered in evidence certified copy of land certificate No. 21, issued by the board of land commissioners of Washington county on the 14th of March, 1839; and also a receipt for taxes from the treasury department of the republic of Texas, dated June 14, 1841, acknowledging receipt of taxes paid by S. Marsh in full upon one league and labor of land lying in the county of Robertson. Defendants also proved that Shubal Marsh was administrator of the estate of Creed T. Pendleton, and acting as such as late as 1852. After the introduction of the original patent in evidence, defendants also introduced and read in evidence the following probate proceedings in Washington county, Tex., duly certified: (1) Petition of Shubal Marsh, administrator, to the probate court of Washington county, September term, 1839, reporting that he had administered all the estate which had come into his hands or knowledge, which would appear by account that day rendered, and had paid out more money than he had received, and that there was still from $400 to $600 outstanding indebtedness; that he had obtained, after much trouble, the land certificate for a league and labor, and had it located in Robertson county, and that this land was the only property belonging to the estate available to pay the debts. The administrator prayed for an order to sell so much of said league and ·labor as would be sufficient to pay all the debts of the estate, and clear the same. (2) An order from the probate court of Washington county, passed September 30, 1839, ordering the administrator, Shubal Marsh, to sell one-half of the league for cash. (3) Report of sale by Shubal Marsh, administrator, November 26, 1839, reporting that he had sold one-half the league to W. Y. McFarland for 27 cents per acre, Texas money, the same being the south half of said league. (4) Petition of Shubal Marsh, June 29, 1840, to probate court of Washington county, reporting that there was still $100 and upwards of debts due by the estate of Creed T. Pendleton, and praying for an order to sell 600 acres of land, or as much as will pay all debts due from the estate, out of the remaining one-half league belonging to said estate, to wit, the north half of his headright league. (5) Order of sale by probate court to sell, using same language as the petition, and made June 29, 1840. Report of sale, August 4, 1840, by the administrator, that he had sold one-half league and labor of land belonging to the estate of Creed T. Pendleton, deceased, to J. D. Giddings, at six cents per acre. This report was apparently accompanied with an account current, showing that for the two sales to McFarland and Giddings the administrator had realized the following sums: From McFarland $119.55, and from Giddings $143.40. The account current was examined and approved by the court. The defendants also proved by O. A. Seward, county clerk of Washington county: That he had been such clerk for nearly six years, and that there was a skip in the probate minutes from January 1, 1839, to February 28, 1842. That there were certain books, known as "Final Records of Estates" in the office in which probate proceedings were recorded in a desultory way for the years 1835 to 1842, inclusive, there being no regularity as to dates, but there were probate minutes recorded for 1837, 1838, and 1842, but none for 1836, 1839, 1840, and 1841. The first record book of probate proceedings was marked "Probate Minutes, Book A," and the first order therein is dated January 13, 1837, and the last dated December 31, 1838. The second book is styled "Probate Minutes, Book B," in which the first order is dated February 28, 1842. That he knew there is now no record of any probate proceedings had in Washington county for the years 1839, 1840, and 1841 to be found in his office, from having examined the records, and repeatedly made search for the same. That he did not know what became of the records. Knows of no tradition except that it is generally known that said records are missing. That there was a number of papers in the estate of Creed T. Pendleton on file in his office, and others which bear no file mark, copies of which he attached to his depositions. That the probate records and minutes in Washington county are designated by letters beginning with the letter "A" and continuing with the letters "B," "C," etc. Rec-

ords of probate minutes "A" and "B" were in his office. The last order in Book
B is of date April, 1851. There is no skip in the lettering. It is usual to begin
with A and number the books in alphabetical order, and, if one such book were
lost after being so lettered, it would certainly be shown though it is possible
that there was a skip in the proceedings. Book A, before mentioned, contained
461 pages, exclusive of index. The last order is partly written on pages 460 and
461. That in the books called "Records of Estates" probate proceedings were
recorded during the years 1836 to 1846, inclusive, in a desultory way, and in
Book B, the first final record, the first proceedings recorded are January, 1839,
and the last was marked "Filed March 3, 1846." In Book C, Final Records, the
first proceedings are dated November 21, 1836, and on page 470 proceedings
recorded of date April 11, 1837. Witness knew nothing of any proceedings
during any year except as previously stated. He never saw any probate record
than those there now, if any such ever existed. The attached copies he made
as nearly as possible fac similes of originals. The papers are old, ragged, torn,
and blotted, and he considers it nearly a physical impossibility to show all minute
marks and blots, but the copies are as nearly correct as he can make them. Ex-
hibit A, attached to Seward's deposition, contained the following papers: Or-
der giving administrator of Pendleton three months to finish and finally close
the administration. This order is dated January 2, 1838. Defendants then of-
fered in evidence Exhibit B, which consisted of copies of a large number of ac-
counts against the estate of Creed T. Pendleton, amounting to upwards of $700,
inventories and sales of personal property amounting to $272.93, and the follow-
ing other papers, all of which were certified by the county clerk of Washington
county, Tex., as being true copies as appears from the original papers in his
office: (1) The application of Shubal Marsh, administrator, September term, 1839,
to sell the league and labor of land in Robertson county, hereinbefore stated.
(2) The order of sale of September 30, 1839, previously stated. (3) Report of
sale of one-half league to W. Y. McFarland, dated November 26, 1839, previously
stated. (4) Petition of Shubal Marsh, administrator, dated June 29, 1840, for
leave to sell 600 acres of the remaining land, or as much as would pay all debts,
which also is previously set forth. (5) Order of sale hereinbefore set out, dated
29th day of June, 1840. (6) Report of sale by Shubal Marsh of one-half league
and labor to J. D. Giddings, dated August 4, 1840, before set out. (7) Account
due by Creed T. Pendleton, the deceased, to Dr. William P. Smith, for medical
services for self and wife, amounting to $40.50, with receipt to S. Marsh for
balance paid by him. (8) Account due by Creed T. Pendleton, deceased, to Dr.
H. H. Kone, for medical services rendered self and wife, amounting to $7.75.
These services seem to have been rendered in the month of June in the year 1835.
(9) Order of the probate court of Washington county, dated September 1, 1835,
ordering Shubal Marsh to make sale of the property and estate, with other or-
ders that need not be specifically set out. After proving by D. C. Giddings cer-
tain facts which tended to establish the loss of record books, and further proof
tending to show that upon the death of Creed T. Pendleton his estate was in-
debted in divers accounts in the amount of more than $700, which indebtedness
was paid and satisfied by Shubal Marsh, administrator, which indebtedness in-
cluded bills for physician's services to wife and self on various dates in June,
1835, the defendants offered in evidence two locations of said league and labor
land certificate No. 21, in Robertson county, Tex. This location of the certificate
in Robertson county was not contested, and for some reason, supposed from the
map to be a partial conflict with a prior 11-league grant, said certificate was
floated in accordance with the laws of the state of Texas and relocated upon the
lands in Coleman county, Tex., in controversy in this suit. Thereupon defend-
ants offered in evidence deed from Shubal Marsh, administrator, to W. Y. Mc-
Farland, dated December 10, 1839, reciting the order of sale, the sale of one-
half league after due advertisement, for cash, and the payment of the purchase
money conveyed to said McFarland one-half league of land described, located
in Robertson county, Tex., and all the right, title, claim, interest, and property
which said Pendleton estate had in and to the same, and to the headright cer-
tificate under which it was located. The plaintiffs objected to the introduction
of said deed on several grounds, not necessary to recite, and because the report
of sale showed a conveyance of the south half of a league in Robertson county,
and the deed conveyed the western half of said league, and therefore there was a

failure of description, and the lands conveyed could not be identified. This objection was sustained by the court, and the deed excluded.

The defendants also offered in evidence a deed from Shubal Marsh, administrator, to J. D. Giddings, for the other half, "being all the remaining portion of said headright of Creed T. Pendleton, located in Robertson county, Texas," the deed reciting that the entire remaining part of said league and labor being necessary to be sold to pay the debts and expenses of administration. It also recited the payment of the purchase money, and conveyed to J. D. Giddings all right, title, etc., of the estate in and to the said half league and labor of land, and to the headright certificate of the said Pendleton, etc. The plaintiffs objected to the introduction of this deed in evidence, because: (1) The order of sale only authorized the administrator to sell 600 acres of said land, or a sufficient amount thereof to pay the indebtedness, which order of sale was void, as being vague, indefinite, and uncertain. (2) Because the order of sale having only ordered the sale of 600 acres, the deed showed that the administrator had sold one-half league and labor, which was in excess of the order of the court. (3) Because the administrator sold more than the order of sale directed or than the report of sale declares that he did sell. (4) Because there was a variance between the petition for order of sale and the report of sale. (5) Because the deed does not show where the land is situated, and does not describe the certificate, or the land attempted to be conveyed by the deed. The court sustained the objections of plaintiffs to the introduction of the deed to Giddings on the ground that the order of sale authorized the administrator to sell 600 acres of said land, or a sufficient amount thereof to pay the remaining indebtedness; and said order of sale was void as being vague, indefinite, and uncertain, the deed showing that the administrator had sold one-half league and labor, which was in excess of the order of court. The defendants then offered in evidence deeds tending to show a regular chain of title from W. Y. McFarland and J. D. Giddings to themselves, some of said mesne conveyances being of the certificate only, duly acknowledged and recorded at and about their several dates, in order to show title in themselves to the lands in controversy; to the introduction of which chain of title plaintiffs objected, because the defendants had failed to connect themselves with the title from Creed T. Pendleton, or his administrator, of the two deeds from Shubal Marsh, administrator, to McFarland and Giddings, and by reason of defective probate proceedings, which objections were sustained by the court, and said chain of title was only permitted to be read to the jury for the purpose of showing title by limitation and improvements in good faith.

The defendants, after a peremptory instruction from the court to the jury to find for plaintiffs for an undivided three-fourths interest in the land in controversy, requested four special instructions, to wit, in substance: (1) That the children and heirs at law of Creed T. Pendleton were aliens at his death, and could not recover. (2) That the Texas wife was entitled to one-half of the land in controversy, and that plaintiffs were precluded from any interest in said one-half, and could only recover such portion of the remaining half as the jury might determine they were entitled to under the instructions of the court. (3) That, defendants having been admitted on trial to be the owners of a portion of the land in controversy, plaintiffs were not entitled to recover any rents until after the institution of the suit. (4) That two of the plaintiffs,—Benjamin A. Pendleton and Jacob H. Pendleton,—they and their descendants, who were parties to the suit, having been shown to have been of age before defendants took possession of the land, in 1883, were barred by limitation. All of these requested special instructions were refused.

The defendants also proved that the defendant the Santana Live-Stock & Land Company took possession of the land in controversy in October, 1883, and held possession till sales were made to its co-defendants, and that the land was of the reasonable value of $2.50 per acre, and of the rental value of 5 cents per acre per annum; that the defendant Newman entered into possession of 640 acres of land on January 21, 1894; that D. S. McDaniel entered into possession of 140 acres of the land on April 10, 1893; that S. J. Picratt entered into the possession of 60 acres of the land on June 2, 1891; that J. D. Smith entered into possession of 355 acres of the land on June 3, 1891; that W. D. Braun entered into possession of 340 acres of the land on June 2, 1891; that Henry Braun entered into possession of 120 acres of the land on June 2, 1891, and J. R. McMillin entered

into possession of 53 acres of the land on December 5, 1891. The verdict and judgment found that these defendants had made permanent and valuable improvements, and the judgment gave them a recovery against plaintiffs for the value of said improvements to the extent of three-fourths, but entered judgment against each of said defendants for rents for the amounts of lands held by them, respectively, at the rate of five cents per acre per annum from and after October, 1883, in accordance with the charge of the court, which charge was excepted to. The defendants, having failed to obtain relief on motions for a new trial and in arrest of judgment, sued out this writ of error.

Geo. Clark and D. C. Bolinger, for plaintiffs in error.

John W. Davis, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and NEWMAN, District Judge.

PARDEE, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

Creed T. Pendleton, in his lifetime, having acquired a right to the grant under the colonization laws of Mexico by immigrating to the state of Coahuila and Texas, and residing there with his family, the original certificate issued to the heirs of said Pendleton on the application of Shubal Marsh, administrator, was assets of said Pendleton's estate, subject to administration by the proper probate court, and to be applied to the payment of said Pendleton's debts. Soye v. Maverick, 18 Tex. 101; Allen v. Clark's Heirs, 21 Tex. 404; Marks v. Hill, 46 Tex. 346; Rogers v. Kennard, 54 Tex. 34; Hill v. Kerr, 78 Tex. 218, 14 S. W. 566; Lyne v. Sanford, 82 Tex. 59, 19 S. W. 847. The patent issued to the heirs of Creed T. Pendleton by the state of Texas on the 9th day of January, 1874, by virtue of the certificate above referred to, vested the legal title to the lands conveyed by the patent in the heirs or assigns of Creed T. Pendleton according to interest in the certificate, by virtue of the act of the legislature of the state of Texas passed December 24, 1851. See Rev. St. Tex. 1879, art. 3961. As the location of the Creed T. Pendleton league and labor in Robertson county, Tex., at the time of the sales by the administrator was invalid by reason of partial conflict with a prior 11-league grant, and as said certificate was afterwards floated in accordance with the laws of Texas, and relocated in Coleman county, on the lands in controversy, any discrepancies in the description of the land as shown in the deed of the administrator to W. Y. McFarland, and in the report of sale by the administrator to the probate court of Washington county, are and were immaterial, as the administrator's deed at least conveyed the right to one-half of the certificate, and upon the relocation in Coleman county the legal title to one-half of the league as located vested in the purchaser of the one-half of the certificate. Simpson v. Chapman, 45 Tex. 560, 566; Renick v. Dawson, 55 Tex. 102, 107; Hines v. Thorn, 57 Tex. 98, 102; Hearne v. Gillett, 62 Tex. 23; Robertson v. Du Bose, 76 Tex. 1, 13 S. W. 300. It is to be noticed that in the administrator's deed to McFarland the certificate issued to the said Creed T. Pendleton was expressly conveyed. As to the title passed by an administrator's deed, see Sypert v. McCowen's Ex'rs, 28 Tex. 636, 640; Bennett v. Kiber, 76 Tex. 389, 13 S. W. 220; Burkett v. Scarborough, 59 Tex. 495; Lumpkin v. Adams, 74 Tex. 103, 11 S. W.

1070. The order of sale under which the administrator of Creed T. Pendleton sold the remaining half league to pay the outstanding debts of the estate authorized the sale of 600 acres, or so much (not of the 600 acres, but) of the remaining half league as was necessary to pay all the debts due by the estate of said Pendleton. The entire record in the case shows that in the case of each order of sale issued it was intended that the administrator should deal with the one-half of the entire league and labor, and, as the entire record may be looked to in determining what was sold by the administrator under the approval of the court, it is clear that under the two sales in question the entire right of Creed T. Pendleton to a league and labor of land was intended to be and was sold. Farris v. Gilbert, 50 Tex. 350, 355; Collins v. Ball, 82 Tex. 259, 266, 17 S. W. 614. After the lapse of over 50 years, every reasonable presumption should be indulged in to support titles acquired at administrators' sales made under orders of courts of competent jurisdiction; and where, as in this case, the record shows that the sales as made by the administrator were duly reported with accompanying accounts, showing the disposition of the proceeds, a confirmation of the sales should be presumed, if necessary, to show full title in the purchasers. It follows, from the application of the foregoing propositions to the case in hand, that the trial court erred in excluding the administrator's deeds to W. Y. McFarland and J. D. Giddings, and the various deeds and transfers of titles from W. Y. McFarland and J. D. Giddings to the plaintiffs in error, and in giving a peremptory instruction to the jury to find in favor of the defendants in error (plaintiffs below) for any portion of the land in controversy. Other questions raised by the assignments of error need not be considered. The judgment of the circuit court is reversed, and the cause is remanded, with instructions to grant a new trial, and thereafter proceed in accordance with the views expressed in this opinion, and as law and justice may require.