## FITZWILLIAM v. CAMPBELL et al.

(Circuit Court of Appeals, Fifth Circuit. January 9, 1900.)

No. 833.

PROBATE COURTS—POWER TO SELL LANDS—CONSTRUCTION OF STATUTE.

The act of the congress of Texas of December 20, 1836 (Hart. Dig. Tex. 1850, p. 146), organizing inferior courts, and defining their powers and jurisdiction, which created a probate court in each county, and defined its jurisdiction, which included "full jurisdiction of all testamentary and other matters appertaining to a probate court," when construed as an entirety, and in view of the fact that under the civil law, upon which the jurisprudence of the republic was founded, no distinction was made between the personal and real estate of a decedent, both of which passed to his administrator, and also in view of the contemporaneous and subsequent construction of the act both by the courts and the congress, must be held to have conferred on such probate courts the power to sell both the personal and real estate of a decedent, when required in the administration of his estate.

In Error to the Circuit Court of the United States for the Western District of Texas.

This was a suit by Ida F. Fitzwilliam against Colin Campbell and others for the recovery of the James W. Fannin headright survey of 4,605 acres of land, situated in Karnes county, Tex. The original petition was filed on July 22, 1895, and the amended petition was filed on February 18, 1897, and was in the usual Texas statutory form of an action in "trespass to try title." The defendants, except three who disclaimed, filed answers in which they asserted title to specific portions of the league and labor, comprising in the aggregate the entire league and labor. These several answers each contained a general exception, a plea of not guilty, pleas of the three, five, and ten years' statutes of limitation, and a plea of improvements in good faith; and each answer indicated the boundaries of the particular tract claimed by the particular defendant. The plaintiff filed a first supplemental petition or replication on November 29, 1898, alleging that Minerva J. Fannin owned the said land from 1838 to the time of her death, on July 27, 1893, and that during all that time she was a person of unsound mind, and that plaintiff acquired her title; the plaintiff also pleading that the defendants claimed the

land under a pretended administration sale made to George W. Grant by the probate court of Brazoria county, Tex., and that the sale was coram non judice and void, and denying that the purchase money was paid, and offering to refund the purchase money, with legal interest, should the court find it had been paid; and also pleading that the defendants had been using the land ever since January 1, 1884, and praying for judgment for rents since that time, to offset the value of the improvements. The cause came on for trial on November 30, 1898, before the court, a jury having been waived. The plaintiff offered in evidence a certified copy of the patent, showing that the land in controversy was patented to the heirs of James W. Fannin, their heirs and assigns, on July 26, 1849. The plaintiff also proved that James W. Fannin, "the hero of Goliad," was killed in 1836, and that his heirs were his wife, Minerva D. Fannin, who died in 1841 or 1842, and his two daughters, Pinckney M. Fannin, who died in 1845, while a minor, and Minerva J. Fannin, who died on July 27, 1893. The plaintiff also showed title to $13/24$ of the estate of Minerva J. Fannin, and rested. The defendants thereupon offered in evidence, over the objections of the plaintiff, which are hereinafter stated, properly certified copies from the probate records of the county court of Brazoria county, Tex., of the following proceedings had in the administration upon the estate of the said James W. Fannin in said court:

(1) "Republic of Texas, County of Brazoria.

"To the Honorable the Probate Court in and for Said County: The petition of Thomas F. McKinney, administrator of the estate of James W. Fannin, deceased, respectfully represents that the said succession consists of an equal moiety of a tract of land situated in this county, containing three thousand acres or thereabouts, and an equal interest in about thirty negroes and other property, such as stock, etc., as will more fully appear by a contract between Joseph Mims, of said county, and the petitioner's intestate, which contract is hereunto annexed as a part of this petition; that a partition of said property cannot as yet be made, as will be seen by the terms of said contract, and, even if it could be legally done, that it would diminish the value of said property; that the estate is insolvent, and the creditors are attempting to enforce the collection of their respective debts; that Minerva Fannin, the widow of said James W. Fannin, is entitled to the half of said property, as gains of matrimony, after the payment of the debts, and that Pinckney M. and Minerva Fannin, the children of said James W. Fannin, are entitled to the remainder of said estate, and that they are minors, and have no guardian to defend them in this suit; that Joseph Mims refuses to permit partition of said property until a dissolution of said partnership. Wherefore the petitioner prays that the said Minerva D. Fannin, the said Pinckney M. and Minerva, minors, and the said Mims be cited to appear at the next term of the court and answer this petition; that proper guardian be appointed to defend the interests of the said minors; that an estimative inventory be made of said succession, and that a decree be rendered for the sale of the property of said succession, for cash; and, finally, that all other relief be granted that the nature of the case requires. The petitioner here makes an exhibit of the debts of said succession, and will pray," etc.

"Jack & Townes, for Petitioner."

"The petition of George Knight & Co., Edwin Waller, Edmund Andrews, and others, creditors named in the tableau of debts, by their attorneys, come into court, and pray for a sale of the property named in the foregoing petition as prayed for; and they pray that they may be made parties to the said petition, and be entitled to all the relief which under the law they are entitled to. Petitioners will pray," etc.

"S. Whiting, by H. P. Brewster, Attorney.

"George W. Grant, by J. Theon, Attorney.

"R. J. Townes, for the Other Creditors.

"Harris and Pease, Attorneys for George Knight & Co. and E. Waller."

"Republic of Texas, County of Brazoria—In Probate.

"Joseph Mims, a joint owner with the estate of James W. Fannin, deceased, of certain property named in the petition of Thomas F. McKinney,

administrator of said estate, comes into court, and consents to the sale of said property upon the terms as set forth in said petition, and further represents that he is a creditor of said estate to a large amount, and joins in the petition of the other creditors for a sale [there] of.                          Jos. Mims."

"Republic of Texas, County of Brazoria—In the Court of Probate.

"Minerva D. Fannin, widow of James W. Fannin, deceased, and Pinckney M. and Minerva Fannin, minor children of said decedent, represented by H. P. Brewster, counsel ad litem, in answer to the petition of Thomas F. McKinney, administrator of said Fannin's estate, and to the petition of sundry creditors, say that they consent to the sale of the property named in said petition, and upon the terms and, in the manner prayed.
                          "Minerva D. Fannin.
                          "Henry P. Brewster, Counsel Ad Litem for Pinckney M. and Minerva Fannin, Minors."

"This day came on to be heard the petition of Thomas F. McKinney, administrator of the estate of James W. Fannin, deceased, and also of the creditors of said estate; and the court having considered the same, and examined the exhibits filed, and heard the answer of Joseph Mims, as well as the answers of Henry P. Brewster, counsel ad litem appointed by the court to defend the interests of the minors, Pinckney M. and Minerva Fannin, in this suit, and heard the arguments of counsel, it is ordered, adjudged, and decreed that all the right, title, and interest of the succession of James Fannin in and to the land, negroes, and other property mentioned in the petition be sold according to law, for cash; and, the court being satisfied that no partition can be made of said property, it is ordered that an estimative inventory be made of the same, and that a sale be made without a partition thereof."

All the above proceedings bear date October 1, 1839.

(2) "Be it remembered that on the 28th day of October, 1839, there was held at the court house in the town of Brazoria a regular term of court of probate for said county. Present: Wm. P. Scott, chief justice; Wm. Eckel, associate justice; and M. B. Williamson, deputy clerk; and Wm. McMaster, deputy sheriff. This day came on to be heard the petition of Thomas F. McKinney, administrator of the estate of James W. Fannin, deceased, and also the petition of the creditors of said estate; and the court having examined the exhibits filed, and heard the answers of Joseph Mims and Minerva D. Fannin, as well as the answer of Henry P. Brewster, counsel ad litem appointed by the court to defend the interest of the minors, Pinckney M. and Minerva Fannin, in this suit, and heard the argument of counsel, it is ordered, adjudged, and decreed that all the right, title, and interest of the succession of James Fannin in and to the land, negroes, and other property mentioned in the petition be sold according to law, for cash; and, the court being satisfied that no partition can be made of said property, it is ordered that an estimative inventory be made of the same, and that a sale be made without a partition, and that an extension of time for twelve months be allowed said McKinney to settle said estate."

(3) "Republic of Texas, County of Brazoria.

"To the Honorable the Probate Court in and for Said County: The petition of Thomas F. McKinney, administrator of the estate of James W. Fannin, deceased, respectfully represents that at a former term of the court the said estate was reported insolvent, and an order obtained for the sale of the property, except the headright of the deceased, containing one league and labor of land lately located, which was omitted to be included in the prayer for the sale of the property. He therefore prays that the same may be sold for cash, according to law. Petitioner will pray," etc.
"December 30, 1839.                          Jack & Townes, for Petitioner.
"Granted. Wm. P. Scott, Probate Judge."

(4) "Be it remembered that on the 30th day of December, 1839, there was holden at the court house in the town of Brazoria a regular term of the probate court of said county. Present: The Hon. Wm. P. Scott, chief justice; Wm. Eckel, associate justice; M. B. Williamson, deputy clerk; Wm. McMaster, sheriff. This day came on to be heard the petition of Thomas F. McKinney,

administrator of the estate of James W. Fannin, representing that at a former term of the court an order was obtained to sell the property belonging to the estate, in the prayer for which order the headright of said Fannin was omitted to be included,—said headright being a league and labor of land recently located,—and praying the court to order the sale of the same for cash. And the court having considered the prayer of the petition, and being satisfied of the truth of the allegations therein contained, it is ordered, adjudged, and decreed that the prayer of the petition be granted, and the land sold for cash."

(5) "Republic of Texas, County of Brazoria.

"Before me, Wm. P. Scott, chief justice and ex officio judge of probate in and for said county, personally came and appeared Sam C. Douglass and Theodore Bennett, appraisers, and R. J. Calder, umpire, called upon by me to value and appraise one headright of a league and labor of land belonging to the estate of James W. Fannin, located near Gonzales, in order for a sale thereof for cash in pursuance of a decree of the probate court for said county, who, being duly sworn, value and appraise the same at fifty cents per acre. To all of which I certify by signing with said appraisers.

"Samuel C. Douglass.
"T. Bennett.
"R. J. Calder.

"Sworn to and subscribed before me this, the 4th day of February, 1840.
"Wm. P. Scott, Probate Judge."

(6) "Be it remembered that on the 4th day of February in the year of our Lord one thousand eight hundred and forty, at the court-house door in the town of Brazoria and republic of Texas, between the hours prescribed by law, I, Wm. P. Scott, chief justice and ex officio judge of probate in and for the county of Brazoria, in pursuance of a decree of the probate court for said county, and advertisement made in accordance with law, having previously had the property appraised by experts appointed by me, as will be seen by the procès verbal thereof hereunto annexed and made a part of this act, offered for sale at public auction at the time and place aforesaid, for cash, the following property belonging to the estate of James W. Fannin, deceased, to wit: One league and one labor of land situated near Gonzales, in the county of ———, being the headright of said Fannin; and, the terms having been proclaimed by me, the said George W. Grant appeared and bid the sum of fifty cents per acre for said land, or two thousand three hundred and five dollars and fifty cents, that being the full amount for which the said land was appraised, and the highest bid offered for the same; and the said Grant having paid to Thomas F. McKinney, administrator of said succession, the full amount bid as aforesaid, as is evidenced by the said McKinney signing this act with me: Now, therefore, I, the said Wm. P. Scott, judge as aforesaid, in consideration of the premises, do hereby grant, bargain, sell, and convey unto the said George W. Grant, and to his heirs and assigns, forever, all the right, title, interest, and claim which the succession of the said James W. Fannin had in said property, viz. one league and labor of land situated as aforesaid, to have and to hold the same unto him, the said George W. Grant, and his heirs and assigns, forever: hereby devesting the said succession, and the heirs thereof, of all right, title, and interest in and to the property aforesaid. And the said McKinney, administrator as aforesaid, signed this act with me, the said judge, on the day aforesaid, in the presence of the subscribing witnesses. I certify this 4th day of February, 1840.

"Wm. P. Scott, Chief Justice, Ex Officio Probate Judge.
"Thomas J. McKinney, Administrator.

"Witnesses:
"C. Dart.
"R. J. Townes."

The above deed was offered in evidence from the proper custody of the defendants, and by them, as an ancient instrument, and also as a recorded instrument. This deed is the ancient instrument it purports to be, and in addition the same was duly proven for record in 1881, by proof of the handwriting of the two subscribing witnesses, made by William McMaster, the person

whose name appears in some of the foregoing probate proceedings as sheriff of said county of Brazoria, and by E. M. Pease, whose name likewise appears in the foregoing probate proceedings as a member of the firm of Harris & Pease; and this deed was duly recorded in Karnes county, Tex., in 1881. The defendants further offered in evidence, as coming from the possession and custody of them, the original patent to the land and premises sued for by the plaintiff in this cause. The defendants also read in evidence a written agreement signed by counsel for plaintiff and defendants, wherein it was expressly admitted by the plaintiff that all title, if any, acquired by said George W. Grant by virtue of said administration sale, was duly vested in the defendants in this cause, through a regular chain of title, through due and proper conveyance from Grant, and through mesne conveyances to the respective defendants. To the introduction of all said probate proceedings as aforesaid, and to said deed of said probate judge and said administrator as aforesaid, the plaintiff made this objection: "That the action of the probate court in making this sale was coram non judice and void, because the probate court of Brazoria county, at the time said proceedings were had, had no jurisdiction or power to sell the property of an estate, the law not having clothed that court with such power; it being contended by the plaintiff that prior to the probate act of Texas of date February 5, 1840, which went into effect on March 16, 1840, the probate court of Texas had no jurisdiction or power to sell the property of an estate." The court thereupon ruled that the county court of Brazoria county, Tex., at the time of the petition for sale. order of sale, and execution and delivery of said deed conveying said league and labor in said administration proceedings, had the jurisdiction and power to sell property of said estate, and to sell said league and labor; and the court stated that it would further hold, if no further testimony was adduced, that said sale in said administration proceedings and deed would completely devest the title out of the estate of said James W. Fannin and pass it to George W. Grant, and, by virtue of the agreement of counsel, to the defendants in this cause. The plaintiff thereupon duly excepted to the rulings of the court. The defendants then rested. The court thereupon rendered judgment for the defendants, and the plaintiff brings the case to this court to review the judgment.

R. C. Walker, for plaintiff in error.

L. H. Browne and V. B. Proctor, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The defendants deraign title to the land sued for from a sale made under a decree of the probate court of the county of Brazoria, republic of Texas. The land was sold as the property of the estate of James W. Fannin, deceased. The decree authorizing the sale was rendered on December 30, 1839. The conveyance was made to the purchaser by authority of the probate court on February 4, 1840. The only material question in the case is raised by the following assignment of error:

"The court erred in admitting in evidence, over the objections of the plaintiff, the transcript of the probate proceedings of Brazoria county, Texas, and the deed to George W. Grant made thereunder, because the probate courts of Texas, at the time said proceedings were had [prior to February 5, 1840], had no jurisdiction or power to sell the property of an estate, and that the action of the probate court of Brazoria county in making said sale was coram non judice and void."

More than 40 years ago, in Baker v. Coe, 20 Tex. 429, Wheeler, J., in delivering the opinion of the court, said that "much the greater part of the real property of the state is held under probate or sher-

iffs' sales." It has been more than 60 years since the decree was entered which is attacked in this case, and we are advised by the argument of the learned counsel for the plaintiff in error that "there has been no decision of the supreme court of Texas upon this precise question," and that "this is the first Texas case in which the question has been presented in such shape as to require a decision." To correctly understand a statute, we must know its subject and its purpose. When we understand its subject-matter and general purpose, we have the key to what would otherwise appear doubtful. To effectuate the general intent by construction, general words may be restrained, or those of narrow import may be expanded. The act of December 20, 1836, was in force when the decree in question was rendered. It is entitled "An act organizing the inferior courts, and defining the powers and jurisdiction of the same." Hart. Dig. Tex. 1850, p. 146. The act creates a county court for each county in the republic of Texas, composed of a chief justice and two associates, and provides that four terms yearly shall be held in each county. The jurisdiction of the county court is defined, and the office of clerk created. The act then provides that the chief justices of the county courts shall be judges of the probate courts for their respective counties. Before quoting the part of the statute conferring probate jurisdiction, let us examine other parts of the act. Provision is made (with some exceptions) for 12 terms a year of the probate court. Id. art. 253. Appeals may be taken from decrees of the probate court to the district court of the county. Id. art. 254. The clerk of the county court is made clerk of the probate court, and is required to record all wills and other instruments required by law to be recorded in that office. Id. art. 257. Before the passage of this act the primary courts had probate jurisdiction, including the authority to decree sales of real estate belonging to the estates of decedents. Baker v. Coe, 20 Tex. 430, 433. The act provides that all probate business heretofore pending before the primary courts shall be transferred to, and be completed in, the probate courts. Hart. Dig. art. 258. It is made the duty of the probate court to compel a settlement within 12 months of all estates heretofore administered upon. Id. art. 259. Section 24 of the act specially relates to the jurisdiction of the court, and is as follows:

"The chief justices of the county courts shall be judges of probate for their respective counties; shall take the probate of wills; grant letters of administration on the estates of persons deceased, who were inhabitants of, or resident in said county, at the time of their decease; shall appoint guardians to minors, idiots, and lunatics; and in conjunction with the associate justices, shall examine and settle the accounts of executors, administrators, and guardians; and said chief justices shall have full jurisdiction of all testamentary and other matters appertaining to a probate court, within their respective counties." Id. art. 252.

Does the statute confer jurisdiction to decree a sale of real estate? If the section stood alone, it may be conceded that the phrase, "shall have full jurisdiction of all testamentary and other matters appertaining to a probate court," would be at least of doubtful significance. Certainly apter language could be used to confer jurisdiction to sell the real estate of an intestate. But this section

is part of an entire act. The act, taken as a whole, creates a probate court, and provides for the administration and final settlement in that court of the estates of decedents, with provision for an appeal to the district court. There is nothing in the scheme to indicate that the probate court is deficient in its power to entirely settle the estate. It does not appear that parties interested must go to the district court within the year in which final settlements must be made, to obtain decrees of sale, before making settlements in the probate court. In its general terms, the act seems to contemplate that all that is needful to make complete settlements may be done in the probate court. This construction becomes more essential when it is remembered that no difference in the power of the court exists as to real estate and personal property. It has power to decree the sale of both or neither. Not one estate in twenty could be settled without a sale of some of its property. The act is passed by the legislature of a republic imbued with the principles of the civil law, which in such cases made no distinction between personal property and real estate. In fact, the administrator at that time placed both the land and the personal property in his inventory of the property of the estate. In a suit begun in 1842, relating to an administration opened in 1834, Lipscomb, J., speaking for the supreme court of Texas, said:

"These distinctions are unknown to the civil law as it prevailed under Spanish modification in Texas. Land here was thought to be of comparatively little value, and many a fine league has been transmitted with as little form and ceremony by our early colonists as would attend the sale of an Indian pony. All property, without distinction, was classed together. The Spanish civil law being the basis of our jurisprudence, much of our legislation after the revolution was imbued with its influence. Hence our act of congress passes all of the estate of a decedent into the hands of the personal representative. He is required to return an inventory of the land, to have it appraised, and it is taken into the estimate of the value of the estate; and his bond, given with reference to the aggregate amount of the estate, binds him to its faithful administration." Thompson v. Duncan, 1 Tex. 485, 488.

The acts which follow the act of December 20, 1836, indicate that the legislature of Texas believed, that the power to sell the property of an estate was vested in the probate courts of Texas. On May 18, 1838, the second congress passed an act providing for the settlement of estates of deceased soldiers. Section 3 of the act provided:

"That no sale of any of the effects of a deceased soldier or officer shall be made, unless by order of the court granting letters of administration, approved by the secretary of war, and published in some newspaper sixty days; and all sales made contrary to the provisions of this section (unless by heirs of full age) shall be entirely null and void." Sayles' Early Laws, § 471; Hart. Dig. arts. 985–988.

By an act of December 24, 1838, this act of May 18, 1838, just above quoted, was amended, and section 1 of the amendment provided:

"That the above recited act shall not be so construed as to apply to the duty of any administrator upon the estate of any deceased citizen soldier, who was a citizen of Texas, in the full exercise of his rights as such at the time of his death." Sayles' Early Laws, § 548; Hart. Dig. art. 989.

An act of the third congress, of date January 23, 1839, regulates sales of real estate by administrators, executors, and guardians. It

provides that the sales shall be made on the first Tuesday of every month, after advertisement for 30 days. Id. arts. 991, 992. These acts are pertinent, as showing the intention of the legislature in the act of December 20, 1836. They are legislative constructions of the former act. In Rex v. Loxdale, 1 Burrows, 447, Lord Mansfield said:

"Where there are different statutes in pari materia, though made at different times, or even expired, and not referring to each other, they shall be taken and construed together as one system, and as explanatory of each other." .

In Doggett v. Walter, 15 Fla. 355, the court held that:

"The meaning and intention of the legislature in the enactment and repeal of laws may often be found in the contemporaneous and subsequent action of that body in reference to the subject-matter, and the evident intention of the legislature will control the construction of its acts."

In Webb v. Sellers, 27 Tex. 423, the probate court of Washington county, at the October term, 1838, had made a decree authorizing an administrator to sell real estate belonging to the estate of his intestate. It is true that no question was made as to the construction of the statutes conferring probate jurisdiction, but the validity of the administrator's sale was necessarily involved. The court said:

"The evidence as a whole shows very clearly, we think, that the probate court of Washington county exercised a rightful jurisdiction in ordering the sale of the land in controversy for the payment of debts due by the estate. It is clearly enough shown that all the orders of the probate court relating to the matter in controversy were made in the course of the administration."

In Pendleton v. Shaw, 44 S. W. 1002, the court of civil appeals of Texas holds valid a sale made under decree of the probate court of Washington county rendered at the September term, 1839. This sale had previously been held valid by the United States circuit court of appeals for the Fifth circuit. Land Co. v. Pendleton, 52 U. S. App. 328, 26 C. C. A. 608, 81 Fed. 784. In Ferguson v. Templeton, 32 S. W. 151, the court of civil appeals of Texas, for the First district, said:

"That a purchaser at administrator's sale under the law of 1836 was not required to look further into the record than the order of sale, for the reason that the probate court was one of general jurisdiction, and its order would therefore protect the purchaser."

In Pleasants v. Dunkin, 47 Tex. 343, the court treats as valid an administrator's sale made under a decree of the probate court rendered at the January term, 1840, which was under the law of December 20, 1836.

It is true that in none of these cases, so far as appears from the reports, was the point urged upon the consideration of the court that the act of December 20, 1836, was not sufficient to confer jurisdiction upon the probate court. Seemingly the bar conceded that the probate court had jurisdiction. The cases perhaps have some value from that fact. They surely have value as showing the practical contemporaneous construction placed by the courts on the act in question. In the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law is entitled to great respect. Edwards' Lessee v. Darby,

12 Wheat. 206, 6 L. Ed. 603; U. S. v. Pugh, 99 U. S. 265, 269, 25 L. Ed. 322.

It is insisted by the plaintiff in error that the case of Bank v. Dudley's Lessee, 2 Pet. 492, 7 L. Ed. 496, sustains the contention against the jurisdiction of the probate court. We find nothing in that case in conflict with the views we have expressed. The decree in question in that case was made in August, 1805, and the law under which it was made had been repealed on June 1, 1805. The statement of the case shows that "the plaintiff insisted, and the court ruled, that the law under which the court proceeded in granting the license to sell had been repealed before the license was granted." This holding of the trial court was affirmed. The phrase, "jurisdiction of all probate and testamentary matters," which was commented on in the case, was quoted from the constitution of Ohio. The question as to this phrase was whether it so fixed the jurisdiction of the court of common pleas to sell real estate of a decedent that it was not subject to the control of the legislature. Marshall, C. J., said:

"'Jurisdiction of all probate and testamentary matters' may be completely exercised without possessing the power to order the sale of the lands of an intestate. Such jurisdiction does not appear to us to be identical with that power or to comprehend it. The constitution did not mean, and could not mean, to deprive the legislature of the power of exercising its wisdom on a subject so vitally interesting to the people, nor do its words convey such an intent. Were it even true—which we cannot admit—that the constitution established the jurisdiction of the court of common pleas in the case, still the legislature might prescribe the rule by which that jurisdiction should be exercised."

The question and circumstances were entirely unlike the present case. In Ohio, the jurisprudence being unaffected by the civil law, the distinction between personal property and real estate was maintained in administrations. The administrator had no title to or control over the real estate. He had the power only to sell by virtue of a statute which was repealed before the order of sale was made. The court was construing a sentence in a state constitution which was intended to briefly indicate the jurisdiction which might be conferred on the court of common pleas by the legislature. The legislature had conferred the jurisdiction, but withdrew it before the decree in question was made. The supreme court was not in that case, as we are in this, construing a statute creating a court and establishing its jurisdiction, and providing elaborately for the administration of estates. An isolated sentence in the constitution of Ohio was under consideration, and there were no contemporaneous constructions by the legislature or judiciary of that state indicating that the words quoted were intended to confer jurisdiction to sell the property of a decedent. On the contrary, the legislature had assumed that legislation was necessary to confer such jurisdiction. In construing section 24 of the act of December 20, 1836 (Hart. Dig. art. 252), we do not look alone at its language. The words conferring jurisdiction, viewed alone, might or might not be held sufficient to confer jurisdiction to decree a sale of a decedent's real estate. But when we examine the entire act in the light of the jurisprudence of the republic as it existed when the act was passed, and in view of the sub-

sequent legislative construction, and consider also the practical contemporaneous construction of it by the probate courts, and the sanction of that construction by the acquiescence of the highest Texas courts, we are convinced that the act conferred on the probate court the jurisdiction to render the decree in question. We think the judgment of the circuit court is right, and it is affirmed.