**WESTERN UNION LIFE INS. CO. v. BARBER, State Insurance Com'r of Oregon.**

(Circuit Court of Appeals, Ninth Circuit. October 18, 1920.)

No. 3450.

Insurance ☞87—Effect of statute on right of agents to take and sell premium notes stated.

Gen. Laws Or. 1917, pp. 333, 386, §§ 14, 24k, the former providing that any note taken by any company or its agent or agents in whole or part payment of a premium for insurance shall be regarded as the property of the insurance company issuing the policy, and any suit thereon shall be brought by and in the name of such company, and the latter, relating expressly to life insurance companies providing that it shall be unlawful for any such company or its agent or representative to hypothecate or sell any note taken for all or part of a premium prior to the delivery of the policy, *held* not to prohibit agents of a life insurance company from taking notes for the amount of a premium in their own name, remitting the premium to the company in cash, or from selling such notes after delivery of the policy.

Gilbert, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit in equity by the Western Union Life Insurance Company against A. C. Barber, State Insurance Commissioner of Oregon. Decree for defendant, and complainant appeals. Reversed.

F. H. Graves, W. G. Graves, and B. H. Kizer, all of Spokane, Wash., for appellant.

George M. Brown, Atty. Gen., of Oregon, I. H. Van Winkle, and Millar E. McGilchrist, Asst. Attys. Gen., of Oregon, and L. A. Liljeqvist, of Portland, Or., for the appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The decree appealed from dismissed the bill of complaint at the complainant's cost. The case made by the bill is clearly and tersely stated by the learned judge of the court below as follows:

"The plaintiff is a life insurance company organized under the laws of the state of Washington, authorized to do business in this state [Oregon]. It has numerous agents engaged herein, and it is alleged such agents cannot solicit business and write policies successfully unless they will extend credit for the first year's premium to and accept notes from applicants for insurance; that under the laws of Washington plaintiff cannot accept such notes as admitted assets, and it is therefore compelled to require its agents to remit to it in cash the amount due it on all first year premiums, for business written by them; that the agents are not financially able to take and hold until due promissory notes, and remit to the home office the amount thereof in cash, and therefore, when the applicant has not the money to pay the premium and desires to give his note, it is necessary for the agent to take such note as his own property and sell the same to some banking house, remitting plaintiff from his own funds the amount due it; that in February, 1919, the defendant in his official capacity as insurance commissioner advised plaintiff's agents that the taking of notes in their own names and the sale thereof by them as their own property, either before or after the delivery of the policy, was illegal, and he so notified the banking houses with which plaintiff's agents had been doing business, and to which were sold the notes taken by them.

"Upon learning of the action of the commissioner, plaintiff took the matter up with him, urged that premium notes were not necessarily the property of plaintiff, but, subject to the limitations as to negotiation imposed by the state law, the agent was at liberty to take such notes in his own name and as his own property, and to negotiate and dispose of the same as such; but the commissioner adhered to his ruling that they were the property of the company, and the agents could not lawfully take them as their own, or dispose of them as such, and to do so was cause for revocation of the agent's license to do business in the state. It is alleged that the defendant threatens to and will unless restrained revoke the license of agents who dispose of premium notes as their own property, and will revoke the license of insurance companies which knowingly permit their agents to do so."

February 16, 1917, the state passed an act "to provide for the regulation and supervision of insurance in the state of Oregon, other than state industrial accident insurance" (General Laws, 1917, c. 203), the fourteenth section of which reads:

"Any note taken in payment or part payment of or for any premium to be paid as the consideration for any policy or indemnity contract issued or delivered in this state by any company or its agent, or agents, shall be regarded as the property of the insurance company issuing such policy or contract, and any suit to collect any such note shall be brought by and in the name of the company issuing such policy or contract."

Section 21 is headed "Domestic Insurance Companies," and is followed by a number of subdivisions thereof containing a large num-

ber of provisions regarding such domestic companies. Section 23 is headed "General Provisions Relating to Mutual Fire Insurance Companies," and that section contains a large number of provisions regarding mutual fire insurance companies. Section 24 is headed "General Provisions Relating to All Life Insurance Companies," and in that section and in the succeeding section 24a such life insurance companies are "defined." Section 24k of the subdivision relating to life insurance companies is as follows:

"(1) It shall be unlawful for any company or agent, or other representative thereof, to hypothecate, sell or otherwise dispose of a promissory note, order or other similar obligation received in payment for all or any part of a premium on a policy of insurance applied for under the provisions of the laws of this state, prior to the delivery of the policy.

" "(2) Any company or any agent or other person who violates any of the provisions of this section shall be deemed guilty of a misdemeanor and, upon conviction thereof, be punished by a fine of not exceeding one hundred dollars ($100.00) for each offense, and the insurance commissioner shall have authority in his discretion to revoke the license to transact business in this state theretofore issued to such company or agent."

Immediately following the provisions relating to life insurance companies, ending with section 24o, is section 25, headed "Provisions Relating to Surety Companies," containing a large number of provisions relating to such surety companies, which is followed by other specifically stated provisions, headed "Provisions Relating to Interinsurance Exchanges."

We have no doubt that section 14, above quoted, means exactly what it plainly says, which is in effect that any and every note taken in payment of or for any premium to be paid as the consideration for any policy or indemnity contract issued or delivered in the state of Oregon (which manifestly includes all contracts of insurance designated in the act of February 16, 1917), by any company or its agent or agents, shall be regarded as the property of the insurance company issuing such policy or contract, and that any suit to collect any such note shall be brought by and in the name of the company issuing such policy or contract. But the declaration that any and every such note shall be regarded as the property of the company issuing the policy or contract for which the note is given, and that in the event suit upon such note is resorted to such suit shall be brought in the name of such company, is very far from declaring what the agent of the company holding such note may or may not do with it in any other respect. By subdivision (k), however, of section 24—which section deals expressly and specifically with "All Life Insurance Companies"—it is expressly declared that it shall be unlawful for any company or agent or other representative thereof, to hypothecate, sell, or otherwise dispose of such note, order, or other similar obligation received in payment for all or any part of a premium of a policy of insurance applied for under the provisions of the laws of the state, prior to the delivery of the policy, and, further, that any company or any agent or other person who violates any of the provisions of section 24 shall be deemed guilty of a misdemeanor, and upon conviction thereof be punished in a prescribed way, and that the insurance commissioner of the state shall have authority in his discretion to re-

voke the license to transact business in the state theretofore issued to such company or agent. Subdivision (k) not only does not prohibit the agent or other legal representative of life insurance companies doing business in Oregon from hypothecating, selling, or otherwise disposing of such notes, orders, or other similar obligations given on account of premiums for insurance, after the delivery of the policy, but, in our opinion, impliedly permits that to be. done by expressly making it unlawful to do so prior to such delivery. And we find strong corroboration of the correctness of the construction thus placed on sections 14 and 24k of the Act of February 16, 1917, in the later statute of the state, enacted in 1919 (Laws of Oregon 1919, p. 160), which reads as follows:

"Whenever any bill, note or other written evidence of indebtedness is given to *any person, firm or corporation* for the premium of any policy of life insurance, said note shall have printed thereupon in legible characters 'Nonnegotiable for thirty days after the date hereof' and said bill, note or other evidence of indebtedness shall be nonnegotiable during *said time*, as understood by the Negotiable Instrument Law of the state of Oregon." (Italics ours.)

The judgment dismissing the bill is reversed, with costs to the appellant.

GILBERT, Circuit Judge (dissenting). It is the contention of the appellant that the Oregon statutes permit the appellant's agents who solicit insurance in the state of Oregon to receive premium notes in their own names and as their own property, and to negotiate and dispose of the same as such. I think that the court below properly held otherwise. Section 14 of the Laws of 1917 provides in clear terms that all notes taken in payment of premiums shall be regarded as the property of the insurance company, and that any suit to collect any such note shall be brought by and in the name of the company. Section 24k of the same act makes it unlawful for any insurance company or its agents to pledge, sell, or dispose of any such notes so belonging to it prior to the delivery of the policy. The amendment of 1919 contains no repeal of the former statutes. It provides that—

"Whenever any bill, note or other written evidence of indebtedness is given to any person, firm or corporation for the premium of any policy of life insurance, said note shall have printed thereupon in legible characters 'Nonnegotiable for thirty days after the date hereof.'"

These three statutory provisions, under well-settled rules, must be construed together, so as to give, if possible, effect to all. The provision of the amendment that when a premium note is given "to any person, firm or corporation" is taken by the majority of this Court to repeal section 14, and provide that premium notes may be given to and become the property of persons and firms, as well as insurance companies. This, I think, is error.

An insurance company can act only through its officers or agents. Its premium notes, in the usual course of business, may be delivered to persons or firms who act for it, as well as to the officers of the corporation itself. The amendment does not mean that such notes may be payable to such persons or firms as their individual property.

Its meaning, in view of the existing law, is that, while such notes may be given to persons or firms on behalf of a corporation, the corporation itself shall be the owner thereof. This is the contemporary construction adopted by the state officials whose duty it is to enforce the law. That fact is to be taken into consideration here, notwithstanding that so brief a period has elapsed since the enactment of the statutes.

In Lewis' Sutherland Statutory Construction, § 474, it is said:

"The practical construction given to a doubtful statute by the department or officers whose duty it is to carry it into execution is entitled to great weight and will not be disregarded or overturned except for cogent reasons, and unless it is clear that such construction is erroneous."

Said the court in Edwards v. Darby, 12 Wheat. 206, 210:

"In the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect."

This rule is reaffirmed in United States v. Moore, 95 U. S. 760, 763, and in subsequent cases, and it has been applied in Fitzwilliam v. Campbell, 99 Fed. 30, 37, Southern Pine Co. v. Hall, 105 Fed. 84, 91, and by this court in Grossett v. Townsend, 86 Fed. 908, 912.

Repeals by implication are not favored. The intention to repeal "will not be presumed, nor the effect of repeal admitted, unless the inconsistency is unavoidable, and only to the extent of the repugnance." Lewis' Sutherland Statutory Construction, § 247. In Winters v. George, 21 Or. 251, 257, the court said:

"It is a reasonable presumption that the Legislature did not intend to keep really contradictory enactments in the statute book, or to effect so important a measure as the repeal of a law without expressing an intention to do so. Such an interpretation, therefore, is not to be adopted unless it be inevitable."

And in Swensen v. Southern Pac. Co., 89 Or. 275, it was said:

"A repeal by implication is effected, if there be such positive repugnancy between the new and the old enactments that they cannot stand together or be harmonized; but the courts will, however, if possible, construe the two statutes together, and adopt any reasonable construction which will sustain both of them."